Good morning. Good morning. May it please the court, my name is Darian Stanford and I am here today on behalf of the appellant Sweed Machinery, a small machine parts manufacturer down in southern Oregon. I'd like to reserve four minutes if I could. All right. For possible rebuttal, thank you. As the court's aware, today's case is about the interpretation of a collective bargaining agreement and it's a specific collective bargaining agreement that was in place between Sweed and its machine and its union between 2007 and 2011. There are previous collective bargaining agreements that I might discuss briefly and then there's a subsequent one. But the case is about the 2007 to 2011 one and about the meaning of the phrase full-time covered employee under section 17.2. Does Sweed have to make contributions in the month following a termination of an employee, an opt-out, or a switch to a non-union position? My focus today is going to be on three primary points and it's fairly simple and straightforward. I'm going to talk briefly about the language itself, I'm going to talk about the prior conduct of the parties, and I'm going to talk about the subsequent conduct of the parties. As you all are aware, the district court ruled against Sweed on all three of those points and I'd like to briefly go into why I think the judge was wrong. On the first point, the language, again it's a... Before you get to your point, and perhaps this is a natural point for me to raise this issue, you were headed for a bench trial before the court ruled, right? That's correct. The discovery is closed? That is correct. So what practical difference does it make to remand at this point? You'd then be back before the same judge doing a bench trial presenting the same evidence that the court considered in connection with the summary judgment motion, right? Fair point, and I thought about that, practically speaking, and I think that the answer is a live witness testimony. I think that while the discovery itself is closed, I think that the testimony of particular individuals from Sweed about the nature of the negotiations and their understanding would be allowed and would be a further development of the record than what was in existence before. Didn't you have the obligation to put forward any such evidence in opposition to summary judgment? If you have witnesses who can say something further, why haven't they already said it in a declaration? That's correct, Your Honor, and the answer to that is... There's not a great answer to that other than to say that some of the points that the client context would have liked to have made could be made in a better fashion than they were previously. Can you give us a sense of what that evidence would look like? Wait, what do you mean it wasn't ambiguous? That's about the language, so you're saying something else when you say something about intent, aren't you? I guess what I'm saying here is this. The best evidence that I believe that I will be able to put forward if this case is remanded back to the district court for a bench trial, like you said, Judge Winn, is that the change in 2012 was not a radical shift to what was done previously, but the nature of those negotiations in 2012 was this is a clarification of what the intent has been all along. And that's the piece of evidence that I don't believe is fully and appropriately before the court as it should be. How will your client be able to show us that it was the other side's intent in 2007? I mean, maybe that's what your client thought all along, but how does that show it's the other side's also? That was the issue in the negotiation at the earlier stage, which I think is what we need for these contracts. Because the negotiation, and it's my understanding that the negotiation in question is that it's not the trust, it's between the union and SWEET. And so the trust has its trust agreement, but the ultimate contribution system is governed according to the terms of the collective bargaining agreement between SWEET and its union. And if you look back at the record, and there are a couple of points where Ms. Alfrey was the main client contact that I had at SWEET, where during the previous dispute in 2008, covering the period between 2004 and 2007, the court will recall, there was an earlier dispute on this exact issue. And during the discussions about you owe us more money, no we don't, in 2008, Ms. Alfrey invited the folks with the trust, if you believe that something different should be happening here or is supposed to be happening here, I invite you to come before and make that intent clarification known to the union the next time the CBA is up for negotiation. There are two instances where she specifically invites them to do that. It's in the record ER 120, ER 127. I still, I'm sorry for interrupting you, but I still don't understand the difference between what was presented at summary judgment and what would be presented if we were to remand for a trial. Now you say the witnesses would take the stand, the judge would have the benefit of live testimony, but would they say anything that's different than what was submitted in connection with the summary judgment motion? Where I think that the weakness with the summary judgment materials, here's the biggest difference that I believe that I can point to, is the strength of what was put forward at summary judgment for what was going on in 2012, reflecting the past practice and that was the knowledge of everyone. But you did make that argument. It's not like this wasn't an argument that you made. You did present that and whatever evidence you had. I presented, yes that argument was presented, but I don't believe it was presented with live testimony with a living, breathing witness saying I sat there and this, first of all we weren't given the inference or the benefit of the doubt of that evidence by the district judge and that's one reason that I believe that we're here. But I believe her specific testimony is more compelling that was put forward. It should have been put forward more appropriately at summary judgment, but at the same time I believe that we are entitled to the inference of what was put forward and I don't believe that we were given the inference that this is just a continuation of past policy. Even if we agree with you and say well this is summary judgment so the inference is really needed to be drawn in your favor and then we remand for a bench trial and you're presenting pretty much the exact same evidence on the one hand, yes there were discussions that you owe this money, you owe this money and Sweet consistently said we don't owe the money, we don't owe the money. I just wonder what practical difference would make it a lot of additional fees than to go through the trial only to present the same evidence again. And I fully understand the court's point. I think the evidence I've articulated as different as the strength of the new evidence versus what was put forward previously. My response then also to the court is I understand there's an overarching judicial efficiency. Let's try to be as efficient as possible with the overburden court system, but at the same time there's a process to protect. Right, now I understand that. I just want to make sure that you've thought about it and you're still asking for it anyway, recognizing that it's pretty much the same evidence you still want us to, the relief you're asking for is to go ahead and send it back to go through the process. I believe that the specific comment not to reveal client communications, but we want the opportunity to go back and lose again the right way. Well, help me out, I don't mean to beat this horse. The district court stated, quote, the parties do not dispute the facts of this case, suggesting that the issue in this case can be decided as a matter of law. End quote. Do you agree that this case turns on a legal issue? I hear you waffling a bit. What will the credibility of a witness on the stand who says the same thing in a declaration or is present in the record another way, how is that going to make a difference? I don't believe that the declaration, I don't believe that she will be saying the same thing. She'll be saying similar things from the declaration, but she'll be saying it more, she'll be saying it more detailed, she'll be saying it better in ways that I didn't fully appreciate at the time of the summary judgment briefing. That is my understanding of what will happen. Looking through, there are a couple of points then that I'd like to continue with. I'm sorry, before you get there, before the time runs out, you want us to focus on the language, and I think we can agree we start with the language of 17.2. Before you get into conduct before or after, tell me, is there any other language in the collective bargaining agreement that would help explain the meaning of 17.2 to the extent it might be ambiguous? In the collective bargaining agreement itself, I don't believe that there is. And is it your position, at least according to the district court, that you were not required to pay contributions as a matter of law because the seven employees at issue were no longer, quote, covered full-time employees under the agreement? Yes. During the contribution month? They were no longer covered full-time employees at the time of the payment. How about at the time, okay, of the contribution month? Yes, that's correct. When you reported the number of hours that an employee had worked the prior month, how did the payment come along with that reporting? Was it one document? Did the funds get direct deposited? Can you describe how this worked? I can, and again, this is my understanding, and I believe Ms. Alfrey addressed this in her declaration a bit. My understanding, and my opposing counsel may have a better clarification here, but my understanding is that what would happen is sometime towards the first or the middle of the month. Let's take, for example, the month of January. An employee works the requisite number of hours in the month of January. So what would happen is those hours are reported. In February? In February, correct. By usually no later than the middle of February, I believe, the hours are reported. And sometime, I believe contemporaneous with the reporting of the hours, but I don't know that for certain, Swede would make a payment for 100% of the contribution amount. And for the employees that we're talking about here, for the most part, we're talking around $800, around $800 a month. So when Swede reported the hours, it also had an obligation to contribute on the basis of those hours, yes? It had an obligation to, yes. It had an obligation, but in the hypothetical that I'm giving you, the person continues to work at Swede. And if someone doesn't continue to work, then there is no obligation? That is our position. And yet you continue to report those hours. That's a different hypothetical than the one that I was answering before. Well, no, I think it's the next question that follows, though. So when someone stopped working in December, did you still report the December hours in January? My understanding, and I don't, that is a good question. I don't know that the record addresses that point. I need to be, I don't know that it does address that point. The payment, just to finish the loop on the payment question that you asked, Judge Friedland, the payment would be made 100% by Swede, and then Swede would take out the 25% that the employee had to contribute through a small deduction in each of their two monthly paychecks. And that's another point that I believe, just practically speaking, goes to support Swede's position. There are no more paychecks once the employee is terminated from which to deduct. Because they're paid, so this is Swede's issue of its own accounting and when you do your payments, but if an employee worked in December for Swede, when is the employee paid for the last two weeks of December? They stop working on December 31st. When are they paid for December 15th to December 31st? Well, in the case of them being terminated in such an organization, under Oregon law, it would be consistent within a day after the termination of their employment. So they're paid in January. They would be paid, well, I suppose that would be correct. Likely they would pick up their paycheck on the last day of work, but they could be paid, I believe, sent in the mail immediately where they would receive it January 1st. So they're not paid on the 15th of December, they're paid at the end of it. So if you know the person is being terminated, why can't you deduct the amount of what you need to pay the fund then? Because you know this is their last paycheck. We better deduct $800 or $400 or whatever the amount is. So deduct not only – The 25% that they would contribute just like you would have if they continued to work. But that 25% for the paychecks in December is already being deducted. There would have to be an additional 25%. It might have to be. Right, but you could do that. I mean, there's no reason you can't do that. That's correct. We could do that. We don't believe that Section 17 required that. But given the hour banking that these employees got, they could continue to have their insurance if they had worked enough hours. Aren't they being cheated for the last months of hours in their hour bank if you don't pay for that last month? I don't believe they are being cheated. They already have coverage for a month. They would already, if they had the requisite hours, have coverage for the month following their termination. Because, again, let's take the hypothetical. They're terminated in January. And so Swede's position is we're not going to make a contribution in February for March coverage. But based on the November hours, they're already getting coverage for the month following. But why shouldn't – if they work – So you're saying you pay for November. So they worked in December. Why shouldn't you have to pay for them to – because there's this time lag. Because of the two months that it takes to sign up, why shouldn't December work give them coverage in February? And I would say because the agreement doesn't read that way. Because the person is no longer a covered full-time employee at the time of the payment. Thank you. You're out of time. I see that I went over time. Thank you. Thank you. Good morning, Your Honors. Noelle Dvorsky on behalf of the Northwest Metal Crafts Trust Fund. I'd like to address a few issues today. I'd like to specifically address the introduction of additional evidence and why this case shouldn't be remanded back down to the district court for finding additional evidence. First, the language is clear on its face. The interpretation of a collective bargaining agreement is a question of law, which you will review de novo. However, in order to start looking at extrinsic evidence, the language of a collective bargaining agreement must not be clear. In this case, the language is completely clear. It requires SWEED to submit contributions on behalf of full-time employees. And following up with the example that we've been working with, so if an employee works in January, SWEED has to submit the contributions in February. SWEED fully understood that. In Ms. Alfrey's declaration, she repeatedly indicates that based on the 160 hours of work performed in January, they remit contributions in February. But I'm looking at the paragraph that addresses contribution, and there isn't a definition of who constitutes a covered full-time employee. In other words, looking at the plain language, we don't know if it has to be a full-time employee at the moment of contribution, or do we look back to the previous month? You look back to the previous month because... And where in the language of the CBA should I look to to find that definition? I'm not sure if it's spelled out exactly like that in the CBA. The contributions are based on that provision, but the practice is they receive a remittance report. But once we start talking about the practice, aren't you going outside the contract? It doesn't seem like this contract spells this out in a clear way. I mean, you're trying to start your argument by saying this is an unambiguous contract, but it doesn't really explain this. That could be... Well, it doesn't lay it out exactly like that, but truly the practice is that... Right, so let's start there. The way I think of it is, well, let's look to the languages of the contract first. If it's conclusive, that ends the matter, right? But here, for purposes of summary judgment, if it's not conclusive, the parties are going to be going outside, relying on industry practice, relying on the party's prior conduct. And when we look at that extrinsic evidence that was submitted in connection with the motion, then at that point all inferences have to really be drawn in the non-moving party's favor. That is correct. However, only to the extent that the record is developed. In response to the trust fund's motion for summary judgment, Swede didn't submit any issues of fact. The only thing they submitted was this declaration showing that, you know, Swede never really wanted to submit these contributions and that they never did submit these contributions and that the trust never agreed with respect to this position. This whole time the trust has been saying, no, you are not interpreting this correctly. Well, help me out. Opposing counsel just indicated that this isn't the first time this issue has come up. He was going to refer to prior and subsequent conduct. Does the record reflect whether Swede had a past practice of making contributions for terminated employees under facts like this? Yes or no? And if there is something in the record, what is it? I do not believe the record reflects that Swede made contributions on behalf of terminated employees. In fact, it reflects that they didn't, right? This has been a conflict for a long time. Correct. And the trust has been arguing with them this whole time. So how is it that summary judgment was properly granted? If one side is saying, well, you owe the contributions and we've been fighting about it for quite some time, and the other side is saying, well, no, I don't. That's not how I read the CBA language. Because essentially what's happening is they are conflating the date of the contributions. They're conflating the due date of the contributions with the actual hours worked. All of these contributions are only based on hours worked. So even though Swede is responsible for submitting the contributions, let's say, by the 15th of the month worked, they are still submitting contributions for January. Right, that's an argument, and it may be better of the two arguments between your client and Swede. But my question is, how does that then lead to summary judgment in your client's favor? Well, I believe, well, so, okay, if we assume the language is ambiguous and the court does decide to consider external evidence, the trust did submit multiple declarations in support of its position. Garth Fisher, the trust account executive, indicated that it's common practice, it's standard practice, excuse me, in the industry. So we have evidence from you that it is standard practice in the industry to pay the way you say, and there was no opposing declaration that I found indicating that the industry standard was different. In other words, an employer submits contributions for hours worked in the month following that work even where the employee was terminated at the end of the previous month. This is correct. That's the uncontested industry standard in the record, correct? That is correct. Is it your position that's enough to give you summary judgment? That is correct. It's because it goes to the purpose of these trust funds, which is to provide benefits to the participants and beneficiaries. When you look at Swede's, let me ask you this. You've got the Fisher declaration, the Hickey declarations, and they talk about the industry practice that Swede was required to report the hours worked. But do the declarations go one step further and talk about the issue of whether Swede was required to contribute? And if there's no distinction between the two, then explain why. I almost don't believe there's a distinction between the two. Swede is required to submit contributions and the hours worked along with their remittance form. Generally, you wouldn't just report the hours. The trust does perform these payroll audits to ensure that all the hours are reported so that the employees receive the benefits to which they are entitled. Generally, the process of receiving the benefits is actually through having to collect the funds. So it goes back to your theory that reporting the hours worked is tied in with the obligation to make contributions and that we have to look to the previous month to determine who's a full-time covered employee. Correct. That's exactly how it works. Just because that's how you report. I mean, the closest analogy is wages. Take your example. If an employee works in the month of January and they're terminated at the end of the month, but the payroll system is not set up to pay until the 15th of the month. The following month. The following month, correct. Until January 15th, the employer doesn't get to say, no, you don't work here anymore, so you're not entitled to your wages. This is very similar to wages in this effect. Like, these are benefits for hours worked. Looking at the Hickey and Fisher declarations, I see that they're both saying that the employer has the obligation to report the hours worked in the month right prior to termination. But I'm not noticing any statement that, in addition to reporting, the employer has to pay. Is there something I'm missing in these declarations? You know, I bet everybody submitting these just assumed that the obligation to submit contribution goes along with the obligation to report. I'm sorry, I don't remember if the declarations specifically state that they have to pay. Well, it doesn't, and that's what I'm trying to focus on. Because there's an assumption that contributions goes hand in hand with reporting of the hours. There's certainly an assumption that contributions are coextensive with eligibility for benefits, but I can't find the language in the CBA or any other agreements or incorporated that tells me the answer to that, or even in these industry practice declarations that you offered. Let me ask you the flip of that question that maybe you can answer. Did Swede argue what purpose there would be for reporting if not to impose a payment obligation? What would be the purpose? Swede did not raise that argument. Swede's primary argument was how are these payments going to benefit Swede? Swede essentially argued that why would Swede have to make these contributions if they don't benefit Swede? It makes no sense. It shows Swede's fundamental lack of understanding as to the purpose of these trust funds, which is to provide benefits to the participants and their beneficiaries. Swede did not address the link between the contributions and the hours. Could the employees have paid? They've got the 25% obligation. Could they have paid the other 75% as well to continue their eligibility for the hours worked in the previous month? Assuming that the employees were fully eligible and that their hour banks were full, the employees would actually retain their coverage until their hour banks run down. Let's say the employees have hour banks that are full, and then Swede doesn't report the contributions the following month. That employee would then retain coverage until their hour bank runs out. Those employees then would be eligible for COBRA and other... But if payment wasn't made, they'd be shortchanged. Correct. If the hour bank was already full, does reporting the last month make no difference? They would lose a month of coverage if they don't... So each time, each month, the hours are pulled out. So it's... But you can only accumulate a certain amount in the hour bank. So say their hour bank is full at the time the termination happens. Yes. If that extra month from the last month worked gets reported and paid, does it actually not add to the hour bank because the hour bank is already full? No, because... So they work in January. Contributions are reported in February. The hours are pulled out for coverage actually in February, which is based on December hours. So it's a constant addition and subtraction to provide... So you're saying you wouldn't have to drain the hour bank yet. You'd have another month before you start draining the hour bank. Correct. And so what's the answer to Judge Wynn's question about whether the employee could have just paid the full 100% to keep that extra hour before you drain the hour bank? Or sorry, the extra month before you drain the hour bank? I believe the employee could, but they are entitled to the benefits for the hours they've already worked. I don't know that for certain. I mean, the trust really tries to collect these contributions directly from the employers who owe it and not from the employees. All right. Thank you. One last question. Have you waived your argument here based on your past practice of not trying to enforce? Your disagreement was sweet. There was an indication by opposing counsel that this has happened before, and you've argued about it, but you've never pursued it. Have you waived any argument to now collect these payments? The trust does not believe so. The trust has indicated that it did not believe that Sweet was reporting correctly. That whole time the trust has maintained the same position. I'm not entirely sure what happened with that first audit that Ms. Alfrey refers to and that they're relying on for the waiver argument, but immediately after receiving this audit, the trust sought payment for these contributions. The trust, you know, the statute of limitations on contract in Washington is six years, so the trust has six years from the knowledge of these breaches to try and pursue and collect them. The trust does not believe it's waived any right to collect these contributions. Thank you. Thank you. I have nothing else. Thank you. Let's put a minute up for rebuttal. Judge Suhari, in response to one of your questions, you talked about there being uncontested evidence of industry practice, and you're right. There is uncontested evidence of industry practice. I believe that there is a case, though, the San Bruno garbage case, 312F Appendix 916, 2009, where it's similar. There was uncontested evidence of industry practice, but the Ninth Circuit said, but that's not enough to have allowed for summary judgment under the facts and circumstances there, and it remanded the case. Other than that point, the only other addition that I have is that we understand there's a difficult road to hoe for the reasons that we let off here, but any lawyer would welcome the opportunity to get a second chance, and under the law of summary judgment and the high standard for summary judgment, we weren't given the inferences that we are entitled to, and we should get that chance to go back before the judge. I have nothing further. All right. Thank you very much. The matter is submitted for decision.
judges: Zouhary, Nguyen, Friedland